# EXHIBIT A

**FILED**

**FEBRUARY 8, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

MARY ANN HERTZ,                           )     PLAINTIFF DEMANDS TRIAL BY JURY
                                          )
        Plaintiff,                        )
                                          )
        v.                                )     No.
                                          )
HUMANA HEALTH PLAN OF OHIO, LTD.          )
d/b/a HUMANA INSURANCE COMPANY,           )
a Kentucky corporation registered in Illinois,   )
SLAVIN & SLAVIN, an Illinois partnership,  )
MARK F. SLAVIN, an Individual,            )
PAULA M. WISNIOWICZ, an Individual, and   )
SHARI B. SLAVIN, an Individual,           )
                                          )
        Defendants.                       )

## 08 C 864

**JUDGE LEFKOW**
**MAGISTRATE JUDGE MASON**

### COMPLAINT FOR BREACH OF ERISA
### AND OTHER RELIEF

Plaintiff, MARY ANN HERTZ, by her attorneys, WEINBERG LAW GROUP, LTD., complains of the
Defendants and states the following:

### COUNT I: BREACH OF ERISA

1.      Defendant SLAVIN & SLAVIN (hereinafter "LAW FIRM") has at all times relevant to this lawsuit been a
law firm operating in the State of Illinois.

2.      Defendant MARK F. SLAVIN (hereinafter "MARK") has at all times relevant to this lawsuit been a lawyer
licensed in the State of Illinois.

3.      Defendant MARK has at all times relevant to this lawsuit been a partner of LAW FIRM.

4.      Defendant SHARI B. SLAVIN (hereinafter "SHARI") has at all times relevant to this lawsuit been a
lawyer licensed in the State of Illinois.

5.      Defendant SHARI has at all times relevant to this lawsuit been a partner of LAW FIRM.

6.    Defendant PAULA M. WISNIOWICZ (hereinafter "Wisniowicz") has at all times relevant to this lawsuit been the Office Manager of LAW FIRM.

7.    At all times relevant to this lawsuit, LAW FIRM has held a group health insurance policy (hereinafter "group policy" with Defendant HUMANA HEALTH PLAN OF OHIO, LTD. d/b/a HUMANA INSURANCE COMPANY (hereinafter "HUMANA"). **(See Certificate of Insurance, excerpts of which are attached hereto and incorporated herein as Exhibit A.)**

8.    On or around April 20, 2007, Plaintiff began employment at LAW FIRM as a paralegal.

9.    Plaintiff was qualified for the position of paralegal and performed to the expectations of LAW FIRM, MARK, and SHARI as to the position of paralegal.

10.    On or around June 1, 2007, Plaintiff started an individual health insurance plan offered through LAW FIRM with HUMANA (hereinafter "individual plan").

11.    On or around Sunday, July 15, 2007, Plaintiff injured her ankle in an accident unrelated to her employment with LAW FIRM.

12.    On or around July 15, 2007, Plaintiff left a telephone message at LAW FIRM advising MARK and LAW FIRM of her injury and that she would not be at work the next day.

13.    On or around July 16, 2007, Plaintiff advised MARK via telephone from the Hospital that her ankle injury would require surgery.

14.    During the telephone conversation referenced in Paragraph 13, MARK, on behalf of LAW FIRM, told Plaintiff not to worry about work during her medical emergency.

15.    On or around July 17, 2007, Plaintiff underwent ankle surgery.

16.    On or around July 19, 2007, LAW FIRM, through WISNIOWICZ terminated Plaintiff's employment with LAW FIRM.

17.    On or around July 19, 2007, LAW FIRM, through WISNIOWICZ sent Plaintiff an email that stated: "Be advised that in regards to your insurance continuation you are covered until the end of the month, July 31, 2007. Humana has your coverage as terminated and the state continuation form must be returned to them for your coverage to apply.  Beginning August 1, 2007 for coverage to apply you will need to send us a check for $727.84."

**(See Email from Wisniowicz to Hertz dated 1/19/07, attached hereto and incorporated herein as Exhibit B.)**

18.    On or around August 8, 2007, Plaintiff received a medical bill dated July 21, 2007 indicating that her individual plan had been terminated.

19.    On or around August 8, 2007, Plaintiff spoke to WISNIOWICZ by telephone.

20.    During the telephone conversation referenced in Paragraph 19, WISNIOWICZ again represented that Plaintiff was eligible for continuation of her individual plan effective as of July 19, 2007 so long as Plaintiff sent a check to LAW FIRM in the amount of seven hundred twenty-seven dollars and eighty-four cents.

21.    On or around August 8, 2007, Plaintiff sent a check for the above-referenced amount by certified mail, return receipt requested.

22.    On or around August 21, 2007, LAW FIRM and MARK mailed Plaintiff a letter claiming that Plaintiff was previously given "erroneous information" regarding the continuation of her individual policy and claiming that Plaintiff was "not eligible for health insurance continuation." **(See Letter from Slavin to Hertz dated 8/21/07, attached hereto and incorporated herein as Exhibit C.)**

23.    Due to WISNIOWICZ and LAW FIRM's representation that Plaintiff was eligible for continuation of her health insurance, Plaintiff did not apply for alternate health insurance.

24.    Due to Plaintiff's lack of health insurance after July 19, 2007, charges incurred for physical therapy and additional surgery were not paid by HUMANA, and Plaintiff is being pursued personally for medical bills in excess of fifteen thousand dollars ($15,000.00).

25.    Due to Plaintiff's lack of health insurance after July 19, 2007, Plaintiff was unable to obtain treatment by medical providers including but not limited to additional rehabilitation, a wheelchair, a walker, and orthotics.

26.    Lack of medical care described in Paragraph 25 impeded Plaintiff's healing process and resulted in greater permanent injury to Plaintiff.

27.    The EMPLOYMENT RETIREMENT INCOME SECURITY ACT OF 1974, 29 U.S.C.A. Ch. 18 (hereinafter "ERISA") applies to "any employee benefit plan if it is established or maintained—(1) by any employer engaged in commerce or in any industry or activity affecting commerce." 29 U.S.C.A. §1103(a)

28.    LAW FIRM's group policy was subject to ERISA.

29.    Plaintiff's individual plan was subject to ERISA.

30.    According to ERISA, a "civil action may be brought—(1) by a participant or beneficiary... (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C.A. §1132(a)(1)(B)

31.    According to ERISA, "[i]n any action under this subchapter...by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C.A. 1132(g)(1)

32.    According to ERISA, "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C.A. §1140

33.    LAW FIRM, MARK, SHARI and WISNIOWICZ discharged Plaintiff for the purpose of interfering with her attainment of rights to which she would have become entitled under the plan in violation of 29 U.S.C.A. §1140.

34.    According to ERISA, "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C.A. §1002(21)(A)

35.    LAW FIRM, MARK, SHARI, and WISNIOWICZ are fiduciaries of LAW FIRM's group plan.

36.    According to ERISA, "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and... (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims... and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter." 29 U.S.C.A. §1104(a)(1)

37.    According to the documents and instruments governing the plan, "[i]nsurance terminates on the earliest of the following... 5. For an Employee, the date he or she no longer qualifies as an Employee." **(See Exhibit A, page 35.)**

38.    According to the documents and instruments governing the plan, "After a qualifying event, COBRA continuation coverage must be offered to each person who is a 'qualified beneficiary.'…. If you are an employee, you will become a qualified beneficiary if you lose your coverage under the Plan because either one of the following qualifying events happens: your hours of employment are reduced; or [y]our employment ends for any reason other than gross misconduct." **(See Notices, attached hereto and incorporated herein as Exhibit D.)**

39.    According to the documents and instruments governing the plan, the "Employer will notify You in writing of Your right to continue coverage." **(See Exhibit A, page 36.)**

40.    Fiduciaries LAW FIRM, MARK, SHARI, and WISNIOWICZ did not discharge their duties with respect to Plaintiff's individual plan "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims" in violation of 29 U.S.C.A. §1104(a)(1)(B).

41.    Fiduciaries LAW FIRM, MARK, SHARI, and WISNIOWICZ did not discharge their duties with respect to Plaintiff's individual plan "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter" in violation of 29 U.S.C.A. §1104(a)(1)(D).

42.    According to ERISA, "[i]n any action under this subchapter… by a participant, beneficiary or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C.A. §1132(g)(1)

43.    Defendants' violations of ERISA proximately caused damages to Plaintiff in excess of fifteen thousand dollars ($15,000.00) as previously described in Paragraph 24 of Count I of this Complaint.

44.    This Court has subject matter jurisdiction of this matter pursuant to 29 U.S.C.A. §1132(e)(1).

45.    Venue is proper in the Northern District of Illinois, Eastern Division, pursuant to 29 U.S.C.A. §1132(e)(2), as the breaches of ERISA described herein occurred in Chicago, Cook County, Illinois.

WHEREFORE, Plaintiff prays this Honorable Court find in her favor and against Defendants HUMANA HEALTH PLAN OF OHIO, LTD. d/b/a HUMANA INSURANCE COMPANY, SLAVIN & SLAVIN, MARK F. SLAVIN, PAULA M. WISNIOWICZ, and SHARI B. SLAVIN, for specific damages in excess of $15,000.00 but less than $25,000.00 as follows:

      (a)    payment of medical bills incurred after July 19, 2007 and continuing as of the date of this Complaint;

      (b)    reimbursement of attorneys fees and costs of this action; and

(c)    such other further relief as this Court deems just and equitable.

## COUNT II: NEGLIGENT MISREPRESENTATION BY LAW FIRM, MARK, SHARI AND WISNIOWICZ

1.    Plaintiff realleges and incorporates Paragraphs 1 through 45 of Count I as though they were set forth in full here.

2.    LAW FIRM, MARK, SHARI, and WISNIOWICZ negligently misrepresented that Plaintiff was entitled to continuation coverage of her individual plan.

3.    Plaintiff relied on this negligent misrepresentation and did not apply for alternate health insurance coverage.

4.    Due to her reliance on this negligent misrepresentation, Plaintiff suffered damages including personal liability for medical bills and greater injury to her ankle as previously described in Paragraphs 24 through 26 of Count I of this Complaint.

WHEREFORE, Plaintiff prays this Honorable Court find in her favor and against Defendants SLAVIN & SLAVIN, MARK F. SLAVIN, PAULA M. WISNIOWICZ, and SHARI B. SLAVIN, for specific damages in excess of $50,000 but less than $100,000.00 as follows:

(a)    payment of medical bills incurred after July 19, 2007 and continuing as of the date of this Complaint;

(b)    compensation for physical injury caused by Plaintiff's inability to procure necessary medical treatment due to acts or omissions by Defendants;

(c)    reimbursement of attorneys fees and costs of this action; and

(d)    such other further relief as this Court deems just and equitable.

## COUNT III: PROMISSORY ESTOPPEL BY LAW FIRM, MARK, SHARI AND WISNIOWICZ

1.    Plaintiff realleges and incorporates Paragraphs 1 through 45 of Count I and Paragraphs 2 through 4 of Count II as though they were set forth in full here.

2.    LAW FIRM, MARK, SHARI, and WISNIOWICZ's statements that Plaintiff qualified for continuation coverage of her individual plan represented an unambiguous promise.

3.    Plaintiff relied on these statements and did not apply for alternate health insurance coverage.

4.    Plaintiff's reliance on the statements was expected and foreseeable by LAW FIRM, MARK, SHARI, and WISNIOWICZ.

5.    Due to her reliance on the unambiguous promise, Plaintiff suffered damages including personal liability for medical bills and greater injury to her ankle as previously described in Paragraphs 24 through 26 of Count I of this Complaint

WHEREFORE, Plaintiff prays this Honorable Court find in her favor and against Defendants SLAVIN & SLAVIN, MARK F. SLAVIN, PAULA M. WISNIOWICZ, and SHARI B. SLAVIN, for specific damages in excess of $50,000 but less than $100,000.00 as follows:

    (a)    payment of medical bills incurred after July 19, 2007 and continuing as of the date of this Complaint;

    (b)    compensation for physical injury caused by Plaintiff's inability to procure necessary medical treatment due to acts or omissions by Defendants;

    (c)    reimbursement of attorneys fees and costs of this action; and

    (d)    such other further relief as this Court deems just and equitable.

### COUNT IV: BREACH OF CONTRACT TO PROCURE INSURANCE BY HUMANA

1.    Plaintiff realleges and incorporates Paragraphs 1 through 45 of Count I, Paragraphs 2 through 4 of Count II, and Paragraphs 2 through 5 of Count III as though they were set forth in full here.

2.    At all times relevant to this lawsuit, HUMANA was in the business of selling and providing health insurance.

3.    On information and belief, LAW FIRM, MARK, SHARI, and WISNIOWICZ, acting on Plaintiff's behalf, submitted Plaintiff's proposal for health insurance continuation coverage to an agent of HUMANA on or around July 19, 2007. **(See letter from M. Slavin to M. Hertz dated 8/21/07, attached hereto and incorporated herein as Exhibit C.)**

4.    On information and belief, on or around July 19, 2007, an agent of HUMANA advised LAW FIRM, MARK, SHARI, and/ or WISNIOWICZ that HUMANA agreed to insure Plaintiff through health insurance continuation coverage for a period of nine (9) months at a rate of seven hundred twenty-seven dollars and eighty-four cents ($727.84) per month.  **(See Exhibit C.)**

5.    On or around July 19, 2007, WISNIOWICZ advised Plaintiff of HUMANA's agreement to provide her health insurance continuation coverage. **(See email from Wisniowicz to M. Hertz, dated 7/19/07, attached hereto**

**and incorporated herein as Exhibit B.)**

6.      Plaintiff did not receive notification of HUMANA's claim that she was ineligible for health insurance continuation coverage from HUMANA until on or around August 22, 2007.

7.      On information and belief, HUMANA did not inform LAW FIRM, MARK, SHARI, and WISNIOWICZ that it would not provide health insurance continuation coverage to Plaintiff until on or around August 14, 2007. **(See Exhibit C.)**

8.      HUMANA did not act promptly, with due diligence and without unreasonable delay in notifying Plaintiff of HUMANA's claim that Plaintiff was ineligible for health insurance continuation coverage.

9.      On information and belief, HUMANA did not act promptly, with due diligence and without unreasonable delay in notifying LAW FIRM, MARK, SHARI, and WISNIOWICZ of HUMANA's claim that Plaintiff was ineligible for health insurance coverage.

10.     If notified promptly, with due diligence and without unreasonable delay of HUMANA's claim that Plaintiff was ineligible for health insurance continuation coverage, Plaintiff would have been able to obtain other health insurance coverage prior to undergoing expensive additional medical treatment.

11.     Due to her reliance on HUMANA's agreement to provide health insurance continuation coverage, Plaintiff suffered damages including personal liability for medical bills and greater injury to her ankle as previously described in Paragraphs 24 through 26 of Count I of this Complaint.

WHEREFORE, Plaintiff prays this Honorable Court find in her favor and against Defendants HUMANA HEALTH PLAN OF OHIO, LTD. d/b/a HUMANA INSURANCE COMPANY for specific damages in excess of $50,000.00 but less than $100,000.00 as follows:

    (a)      payment of medical bills incurred after July 19, 2007 and continuing as of the date of this Complaint;

    (b)      compensation for physical injury caused by Plaintiff's inability to procure necessary medical treatment due to acts or omissions by Defendants;

    (c)      reimbursement of attorneys fees and costs of this action; and

    (d)      such other further relief as this Court deems just and equitable.

## COUNT V: NEGLIGENT MISREPRESENTATION BY HUMANA

1.      Plaintiff realleges and incorporates Paragraphs 1 through 45 of Count I, Paragraphs 2 through 4 of Count II, Paragraphs 2 through 5 of Count III and Paragraphs 2 through 11 of Count IV as though they were set forth in full here.

2.      On information and belief, HUMANA negligently misrepresented that Plaintiff was entitled to continuation coverage of her individual plan.

3.      Plaintiff relied on this negligent misrepresentation and did not apply for alternate health insurance coverage.

4.      Due to her reliance on this negligent misrepresentation, Plaintiff suffered damages including personal liability for medical bills and greater injury to her ankle as previously described in Paragraphs 24 through 26 of Count I of this Complaint.

WHEREFORE, Plaintiff prays this Honorable Court find in her favor and against Defendants HUMANA HEALTH PLAN OF OHIO, LTD. d/b/a HUMANA INSURANCE COMPANY for specific damages in excess of $50,000.00 but less than $100,000.00 as follows:

(a)      payment of medical bills incurred after July 19, 2007 and continuing as of the date of this Complaint;

(b)      compensation for physical injury caused by Plaintiff's inability to procure necessary medical treatment due to acts or omissions by Defendants;

(c)      reimbursement of attorneys fees and costs of this action; and

(d)      such other further relief as this Court deems just and equitable.

## COUNT VI: PROMISSORY ESTOPPEL BY HUMANA

1.      Plaintiff realleges and incorporates Paragraphs 1 through 45 of Count I, Paragraphs 2 through 4 of Count II, Paragraphs 2 through 5 of Count III, Paragraphs 2 through 11 of Count IV, and Paragraphs 2 through 4 of Count V as though they were set forth in full here.

2.      HUMANA's statements that Plaintiff qualified for continuation coverage of her individual plan represented an unambiguous promise.

3.      Plaintiff relied on these statements and did not apply for alternate health insurance coverage.

4.      Plaintiff's reliance on the statements was expected and foreseeable by HUMANA.

5.      Due to her reliance on the unambiguous promise, Plaintiff suffered damages including personal liability for medical bills and greater injury to her ankle as previously described in Paragraphs 24 through 26 of Count I of this Complaint.

WHEREFORE, Plaintiff prays this Honorable Court find in her favor and against Defendants HUMANA HEALTH PLAN OF OHIO, LTD. d/b/a HUMANA INSURANCE COMPANY for specific damages in excess of $50,000.00 but less than $100,000.00 as follows:

(a)     payment of medical bills incurred after July 19, 2007 and continuing as of the date of this Complaint;

(b)     compensation for physical injury caused by Plaintiff's inability to procure necessary medical treatment due to acts or omissions by Defendants;

(c)     reimbursement of attorneys fees and costs of this action; and

(d)     such other further relief as this Court deems just and equitable.

Respectfully,

MARY ANN HERTZ

By: _____

One of her Attorneys

Rebecca L. Weinberg
Christopher D. Willis
Weinberg Law Group, Ltd.
2446 North Clark Street
Chicago, Illinois 60614
773/ 296-4900
rweinberg@weinberglaw.net

Case 1:08-cv-00864    Document 12-2    Filed 04/11/2008    Page 12 of 34
Case 1:08-cv-0    ⸱4    Document 1-2    Filed 02/08/    8    Page 1 of 34    JUDGE LEFKOW
MAGISTRATE JUDGE MASON

08 C 864

Employer:            SLAVIN & SLAVIN

Group Number:        600662

# CERTIFICATE OF INSURANCE
### Humana Insurance Company

This Certificate is not an insurance policy. It is an outline of the insurance provided by the group policy and it does not extend or change the coverage afforded by such group policy. The insurance described by this Certificate is subject to all the provisions, terms, exclusions and conditions of the group policy.

This Certificate supersedes and replaces any Certificate previously issued under the provisions of the group policy.

### IMPORTANT NOTICE

WARNING, LIMITED BENEFITS WILL BE PAID WHEN NON-PARTICIPATING PROVIDERS ARE USED. You should be aware that when you elect to utilize the services of a non-participating provider for a covered service in non-emergency situations, benefit payments to such non-participating provider are not based upon the amount billed. The basis of your benefit payment will be determined according to your policy's fee schedule, usual and customary charge (which is determined by comparing charges for similar services adjusted to the geographical area where the services are performed), or other method as defined by the policy. YOU CAN EXPECT TO PAY MORE THAN THE COINSURANCE AMOUNT DEFINED IN THE POLICY AFTER THE PLAN HAS PAID ITS REQUIRED PORTION. Non-participating providers may bill members for any amount up to the billed charge after the plan as paid its portion of the bill. Participating providers have agreed to accept discounted payments for service with no additional billing to the member other than coinsurance and deductible amounts. You may obtain further information about the participating status of professional providers and information on out-of-pocket expenses by calling the toll fee telephone number on your identification card.

IL-57961-07 E 11/2002

EXHIBIT

A

## TERMINATION OF COVERAGE

Termination of Coverage may be immediate or at the end of the period which was selected by **Your Employer** on the Employer Group Application.

Insurance terminates on the earliest of the following:

1. The date this Group Policy terminates;

2. The end of the period for which required premium was due Us and not received by **Us**;

3. The date the **Employer's** participation under this Policy terminates;

4. For the **Employee**, the date he or she terminates employment with the **Employer**;

5. For an **Employee**, the date he or she no longer qualifies as an **Employee**;

6. The date **You** fail to be in an eligible class of persons as provided in the Insurance Classifications as stated in the Employer Group Application;

7. The date **You** enter full-time military, naval or air service;

8. The date the **Employee** retires, except if the Employer Group Application provides coverage for a retiree class of **Employees** and the retiree is in an eligible class of retirees, selected by the **Employer**, and **We** are notified by the **Employer**;

9. The date the **Employee** requests termination of insurance to be effective for the **Employee** or **Dependents**;

10. For a **Dependent**, the date the **Employee's** insurance terminates;

11. For a **Dependent**, the date he or she no longer qualifies as a **Dependent**; or

12. For any benefit, the date the benefit is deleted from this Policy.

**YOU AND THE EMPLOYER ARE RESPONSIBLE TO ADVISE US OF ANY CHANGES IN ELIGIBILITY INCLUDING THE LACK OF ELIGIBILITY OF ANY COVERED PERSON. COVERAGE WILL NOT CONTINUE BEYOND THE LAST DATE OF ELIGIBILITY REGARDLESS OF THE LACK OF NOTICE TO US.**

## SPECIAL PROVISIONS FOR NOT BEING IN ACTIVE STATUS

If the **Employer** continues to pay required premiums and continues participation under this Policy, **Your** coverage, other than Short Term Disability benefits, if any, will remain in force for:

1. No longer than three consecutive months if the **Employee** is:

   A. Temporarily laid-off;

   B. In part-time status; or

IL-57960-07 E TER 10/2003                          35

## TERMINATION OF COVERAGE (continued)

C. On an **Employer** approved leave of absence.

2. No longer than 12 consecutive months if the **Employee** is **Totally Disabled.**

If the **Employee** becomes **Totally Disabled** and wishes to apply for Waiver of Premium, **We** must receive premium for **Employee** Term Life Coverage for the six consecutive month period while the **Employee** is covered under the Special Provisions for Not Being in Active Status. All premium must be submitted to **Us** through the **Employer.**

If this coverage terminates, the **Employee** may exercise the rights under any applicable Continuation of Medical Benefits provision, or the Medical or Life Conversion Privilege described in this Certificate. If the **Employee** utilizes the Conversion Privilege, he or she thereby waives the right to continue coverage. If the **Employee** returns to an **Active Status,** he or she will be considered a new **Employee** and must re-enroll for **Employee** Coverage.

## CONTINUATION FOR LOSS OF EMPLOYMENT

If **Your** medical coverage under the Policy terminates due to loss of employment **You** may continue medical coverage for **You** and **Your** covered **Dependents** if:

1. **You** were covered under the Policy for at least three consecutive months immediately prior to termination;

2. **You** are not eligible for Medicare or other group coverage; and

**You** and **Your Dependents** are NOT eligible for continuation of medical coverage if **You** were discharged from **Your** employment due to commission of a felony or a theft in connection with **Your** work and for which the **Employer** was in no way responsible; provided that **You** have admitted to commission of the felony or theft or have been convicted or received an order of supervision by a court of competent jurisdiction for such act.

## ENROLLMENT

The **Employer** will notify **You** in writing of **Your** right to continue coverage. If **You** elect to continue coverage **You** must notify the **Employer** in writing within ten days following:

1. The date **Your** coverage would otherwise terminate; or

2. The date **You** received written notification of **Your** right to continue coverage.

In no event will **You** be eligible to elect continuation of coverage more than 60 days after the date **Your** coverage would otherwise terminate.

If **You** elect to continue coverage **You** must pay the total monthly premium in advance to the **Employer.** The premium for continuing **Your** coverage will be the rate which would have been applicable to the **Employer** for **Your** group coverage during the continuation period.

**Paula**

**From:** Paula [Paula@slavinandslavin.com]
**Sent:** Thursday, July 19, 2007 2:13 PM
**To:** 'hertzma@aol.com'
**Subject:** Insurance Continuation

Mary Ann,

Be advised that in regards to your insurance continuation you are covered until the end of the month, July 31, 2007. Humana has your coverage as terminated and the state continuation form must be returned to them for your coverage to apply. Beginning August 1, 2007 for coverage to apply you will need to send to us a check for $727.84.

Paula M. Wisniowicz
Office Manager

SLAVIN & SLAVIN
20 South Clark Street, Suite 510
Chicago, IL 60603

p: 312.782.7848
f: 312.782.8272
e: paula@slavinandslavin.com

*I was still in
it had of this form
did not mail check
until the 7th — within
grace period.*

THIS COMMUNICATION IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS CONFIDENTIAL, COVERED BY AN ATTORNEY-CLIENT PRIVILEGE AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to us at the above address by mail. Thank you.



EXHIBIT
B

6962964949  <<8474174105  84767414105
07-09-24 23:33

08 C 864

# SLAVIN & SLAVIN
### ATTORNEYS AT LAW

August 21, 2007

Mary Ann Hertz
932 ½ Judson Avenue
Apartment 2S
Evanston, Illinois 60202

Dear Mary Ann:

I am writing to memorialize and update you concerning the issue pertaining to your eligibility for health insurance. Previously, when Paula spoke to you she gave you true, complete and accurate information that was provided to us by a representative of Humana. On August 14, 2007, through a different representative an apology has been expressed to us indicating that the information previously provided to us was erroneous and that you are not eligible for health insurance continuation. The explanation as to why is contained in the attached letter.

We regret any undue stress caused to you by the erroneous information previously transmitted to you on account of our detrimental reliance on information provided by Humana. We wish you peace and a speedy recovery.

Sincerely,

Mark F. Slavin

Attachment



**EXHIBIT**
C

20 SOUTH CLARK STREET, SUITE 510, CHICAGO, ILLINOIS 60603
(312) 782-7848    FAX (312) 782-8272

Case 1:08-cv-00864    Document 12-2    Filed 04/11/2008    Page 17 of 34
Case 1:08-cv-( 64    Document 1-5  Filed 02/08/ )8    Page   of
08 C 864
JUDGE LEFKOW
MAGISTRATE JUDGE MASON

## NOTICES

The following pages contain important information about Humana's claims procedures and certain federal laws. There may be differences between the Certificate of Insurance and this Notice packet. The Plan participant is eligible for the rights more beneficial to the participant.

This section includes notices about:

Claims and Appeal Procedures

Federal Legislation

    Women's Health and Cancer Rights Act

    Statement of Rights Under the Newborns' and Mothers' Health Protection Act

    Medical Child Support Orders

    General Notice of COBRA Continuation of Coverage Rights

    Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA)

    Family And Medical Leave Act (FMLA)

    Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA)
    Your Rights Under ERISA

Privacy and Confidentiality Statement



EXHIBIT
D

## NOTICES (continued)

## Claims and appeals procedures

### Federal standards

The Employee Retirement Income Security Act of 1974 (ERISA) established minimum requirements for claims procedures, Humana complies with these standards. Covered persons in insured plans subject to ERISA should also consult their insurance benefit plan documents (e.g., the Certificate of Insurance or Evidence of Coverage). Humana complies with the requirements set forth in any such benefit plan document issued by it with respect to the plan unless doing so would prevent compliance with the requirements of the federal ERISA statute and the regulations issued thereunder. The following claims procedures are intended to comply with the ERISA claims regulation, and should be interpreted consistent with the minimum requirements of that regulation. Covered persons in plans not subject to ERISA, should consult their benefit plan documents for the applicable claims and appeals procedures.

### Discretionary authority

With respect to paying claims for benefits or determining eligibility for coverage under a policy issued by Humana, Humana as administrator for claims determinations and as ERISA claims review fiduciary, shall have full and exclusive discretionary authority to:

- Interpret plan provisions;
- Make decisions regarding eligibility for coverage and benefits, and
- Resolve factual questions relating to coverage and benefits.

### Definitions

*Adverse determination* means a decision to deny benefits for a *pre-service claim* or a *post-service claim* under a *group health plan.*

*Claimant* means a covered person (or authorized representative) who files a claim.

*Concurrent-care decision* means a decision by the plan to reduce or terminate benefits otherwise payable for a course of treatment that has been approved by the plan (other than by plan amendment or termination) or a decision with respect to a request by a Claimant to extend a course of treatment beyond the period of time or number of treatments that has been approved by the plan.

*Group health plan* means an employee welfare benefit plan to the extent the plan provides medical care to employees or their dependents directly (self insured) or through insurance (including HMO plans), reimbursement or otherwise.

*Health insurance issuer* means the offering company listed on the face page of your Certificate of Insurance and referred to in this document as "Humana."

*Post-service claim* means any claim for a benefit under a *group health plan* that is not a *pre-service claim.*

2

## NOTICES (continued)

*Pre-service claim* means a request for authorization of a benefit for which the plan conditions receipt of the benefit, in whole or in part, on advance approval.

*Urgent-care claim (expedited review)* means a claim for covered services to which the application of the time periods for making non-urgent care determinations:

- Could seriously jeopardize the life or health of the covered person or the ability of the covered person to regain maximum function; or

- In the opinion of a physician with knowledge of the covered person's medical condition, would subject the covered person to severe pain that cannot be adequately managed without the service that is the subject of the claim.

Humana will make a determination of whether a claim is an *urgent-care claim*. However, any claim a physician, with knowledge of a covered person's medical condition, determines is a "*urgent-care claim*" will be treated as a "claim involving urgent care."

### Submitting a claim

This section describes how a *claimant* files a claim for plan benefits. A claim must be filed in writing and delivered by mail, postage prepaid, by FAX or e-mail. A request for pre-authorization may be filed by telephone. The claim or request for pre-authorization must be submitted to Humana or to Humana's designee at the address indicated in the covered person's benefit plan document or identification card. This is particularly important with respect to mental health coordinators and other providers to whom Humana has delegated responsibility for claims administration. Claims will be not be deemed submitted for purposes of these procedures unless and until received at the correct address.

Claims submissions must be in a format acceptable to Humana and compliant with any legal requirements. Claims not submitted in accordance with the requirements of applicable federal law respecting privacy of protected health information and/or electronic claims standards will not be accepted by Humana.

Claims submissions must be timely. Claims must be filed as soon as reasonably possible after they are incurred, and in no event later than the period of time described in the benefit plan document.

Claims submissions must be complete and delivered to the designated address. At a minimum they must include:

- Name of the covered person who incurred the covered expense;
- Name and address of the provider;
- Diagnosis;
- Procedure or nature of the treatment;
- Place of service;
- Date of service; and
- Billed amount.

3

Case 1:08-cv-00864   Document 12-2   Filed 04/11/2008   Page 20 of 34
Case 1:08-cv-C   34   Document 1-6   Filed 02/08/   8   Page   JUDGE LEFKOW
MAGISTRATE JUDGE MASON

08 C 864

## NOTICES (continued)

Presentation of a prescription to a pharmacy does not constitute a claim for benefits under the plan. If a covered person is required to pay the cost of a covered prescription drug, he or she may submit a written claim for plan benefits to Humana.

A general request for an interpretation of plan provisions will not be considered a claim. Requests of this type, such as a request for an interpretation of the eligibility provisions of the plan, should be directed to the plan administrator.

### Failure to provide necessary information

If a *pre-service claim* submission is not made in accordance with the plan's requirements, Humana will notify the *claimant* of the problem and how it may be remedied within five (5) days (or within 24 hours, in the case of an *urgent-care claim*). If a *post-service claim* is not made in accordance with the plan's requirement, it will be returned to the submitter.

### Authorized representatives

A covered person may designate an authorized representative to act on his or her behalf in pursuing a benefit claim or appeal. The authorization must be in writing and authorize disclosure of health information. If a document is not sufficient to constitute designation of an authorized representative, as determined by Humana, the plan will not consider a designation to have been made. An assignment of benefits does not constitute designation of an authorized representative.

Any document designating an authorized representative must be submitted to Humana in advance or at the time an authorized representative commences a course of action on behalf of the covered person. Humana may verify the designation with the covered person prior to recognizing authorized representative status.

In any event, a health care provider with knowledge of a covered person's medical condition acting in connection with an Urgent-care Claim will be recognized by the plan as the covered person's authorized representative.

Covered persons should carefully consider whether to designate an authorized representative. Circumstances may arise under which an authorized representative may make decisions independent of the covered person, such as whether and how to appeal a claim denial.

### Claims decisions

After a determination on a claim is made, Humana will notify the *claimant* within a reasonable time, as follows:

- *Pre-service claims* - Humana will provide notice of a favorable or *adverse determination* within a reasonable time appropriate to the medical circumstances but no later than 15 days after the plan receives of the claim.

4

## NOTICES (continued)

This period may be extended by an <u>additional 15 days</u>, if Humana determines the extension is necessary due to matters beyond the control of the plan. Before the end of the initial 15-day period, Humana will notify the *claimant* of the circumstances requiring the extension and the date by which Humana expects to make a decision.

If the reason for the extension is because Humana does not have enough information to decide the claim, the notice of extension will describe the required information, and the *claimant* will have at least <u>45 days</u> from the date the notice is received to provide the necessary information.

- *Urgent-care claims (expedited review)* - Humana will determine whether a particular claim is an *urgent-care claim*. This determination will be based on information furnished by or on behalf of a covered person. Humana will exercise its judgment when making the determination with deference to the judgment of a physician with knowledge of the covered person's condition. Humana may require a *claimant* to clarify the medical urgency and circumstances supporting the *urgent-care claim* for expedited decision-making.

  Notice of a favorable or *adverse determination* will be made by Humana as soon as possible, taking into account the medical urgency particular to the covered person's situation, but not later than <u>72 hours</u> after receiving the *urgent-care claim*.

  If a claim does not provide sufficient information to determine whether, or to what extent, services are covered under the plan, Humana will notify the *claimant* as soon as possible, but not more than <u>24 hours</u> after receiving the *urgent-care claim*. The notice will describe the specific information necessary to complete the claim. The *claimant* will have a reasonable amount of time, taking into account the covered person's circumstances, to provide the necessary information – but not less than <u>48 hours</u>.

  Humana will provide notice of the plan's urgent-care claim determination as soon as possible but no more than 48 hours after the earlier of:

  - The plan receives the specified information; or
  - The end of the period afforded the Claimant to provide the specified additional information.

- *Concurrent-care decisions* - Humana will notify a *claimant* of a *concurrent-care decision* involving a reduction or termination of pre-authorized benefits sufficiently in advance of the reduction or termination to allow the *claimant* to appeal and obtain a determination.

  Humana will decide *urgent-care claims* involving an extension of a course of treatment as soon as possible taking into account medical circumstances. Humana will notify a *claimant* of the benefit determination, whether adverse or not, within <u>24 hours</u> after the plan receives the claim, provided the claim is submitted to the plan 24 hours prior to the expiration of the prescribed period of time or number of treatments.

- *Post-service claims* - Humana will provide notice of a favorable or *adverse determination* within a reasonable time appropriate to the medical circumstances but no later than <u>30 days</u> after the plan receives the claim.

5

## NOTICES (continued)

This period may be extended an _additional 15 days_, if Humana determines the extension is necessary due to matters beyond the plan's control. Before the end of the initial 30-day period, Humana will notify the affected _claimant_ of the extension, the circumstances requiring the extension and the date by which the plan expects to make a decision.

If the reason for the extension is because Humana does not have enough information to decide the claim, the notice of extension will describe the required information, and the claimant will have at least _45 days_ from the date the notice is received to provide the specified information. Humana will make a decision on the earlier of the date on which the claimant responds or the expiration of the time allowed for submission of the requested information.

### Initial denial notices

Notice of a claim denial (including a partial denial) will be provided to _claimants_ by mail, postage prepaid, by FAX or by e-mail, as appropriate, within the time frames noted above. With respect to adverse decisions involving _urgent-care claims_, notice may be provided to _claimants_ orally within the time frames noted above. If oral notice is given, written notification must be provided no later than 3 days after oral notification.

A claims denial notice will convey the specific reason for the _adverse determination_ and the specific plan provisions upon which the determination is based. The notice will also include a description of any additional information necessary to perfect the claim and an explanation of why such information is necessary. The notice will disclose if any internal plan rule, protocol or similar criterion was relied upon to deny the claim. A copy of the rule, protocol or similar criterion will be provided to _claimants_, free of charge, upon request.

The notice will describe the plan's review procedures and the time limits applicable to such procedures, including a statement of the Claimant's right to bring a civil action under ERISA Section 502(a) following an adverse benefit determination on review.

If an _adverse determination_ is based on medical necessity, experimental treatment or similar exclusion or limitation, the notice will state that an explanation of the scientific or clinical basis for the determination will be provided, free of charge, upon request. The explanation will apply the terms of the plan to the covered person's medical circumstances.

In the case of an adverse decision of an _urgent-care claim_, the notice will provide a description of the plan's expedited review procedures.

### Appeals of adverse determinations

A _claimant_ must appeal an _adverse determination_ within _180 days_ after receiving written notice of the denial (or partial denial). An appeal may be made by a _claimant_ by means of written application to Humana, in person, or by mail, postage prepaid.

## NOTICES (continued)

A *claimant*, on appeal, may request an expedited appeal of an adverse *urgent-care claim* decision orally or in writing. In such case, all necessary information, including the plan's benefit determination on review, will be transmitted between the plan and the *claimant* by telephone, facsimile, or other available similarly expeditious method, to the extent permitted by applicable law.

Determination of appeals of denied claims will be conducted promptly, will not defer to the initial determination and will not be made by the person who made the initial adverse claim determination or a subordinate of that person. The determination will take into account all comments, documents, records, and other information submitted by the *claimant* relating to the claim.

On appeal, a *claimant* may review relevant documents and may submit issues and comments in writing. A *claimant* on appeal may, upon request, discover the identity of medical or vocational experts whose advice was obtained on behalf of the plan in connection with the *adverse determination* being appealed, as permitted under applicable law.

If the claims denial is based in whole, or in part, upon a medical judgment, including determinations as to whether a particular treatment, drug, or other service is experimental, investigational, or not medically necessary or appropriate, the person deciding the appeal will consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment. The consulting health care professional will not be the same person who decided the initial appeal or a subordinate of that person.

### Time periods for decisions on appeal

Appeals of claims denials will be decided and notice of the decision provided as follows:

- *Urgent-care claims* - As soon as possible but no later than 72 hours after Humana receives the appeal request;
- *Pre-service claims* - Within a reasonable period but no later than 30 days after Humana receives the appeal request;
- *Post-service claims* - Within a reasonable period but no later than 60 days after Humana receives the appeal request;
- *Concurrent-care decisions* - Within the time periods specified above depending on the type of claim involved.

### Appeals denial notices

Notice of a claim denial (including a partial denial) will be provided to *claimants* by mail, postage prepaid, by FAX or by e-mail, as appropriate, within the time periods noted above.

A notice that a claim appeal has been denied will include:

- The specific reason or reasons for the *adverse determination*;

## NOTICES (continued)

- Reference to the specific plan provision upon which the determination is based;

- If any internal plan rule, protocol or similar criterion was relied upon to deny the claim. A copy of the rule, protocol or similar criterion will be provided to the *claimant*, free of charge, upon request;

- A statement describing any voluntary appeal procedures offered by the plan and the *claimant's* right to obtain the information about such procedures, and a statement about the *claimant's* right to bring an action under §502(a) of ERISA;

- If an *adverse determination* is based on medical necessity, experimental treatment or similar exclusion or limitation, the notice will state that an explanation of the scientific or clinical basis for the determination will be provided, free of charge, upon request. The explanation will apply the terms of the plan to the covered person's medical circumstances.

In the event an appealed claim is denied, the *claimant* will be entitled to receive without charge reasonable access to, and copies of, any documents, records or other information that:

- Was relied upon in making the determination;

- Was submitted, considered or generated in the course of making the benefit determination, without regard to whether such document, record or other information was relied upon in making the benefit determination;

- Demonstrates compliance with the administrative processes and safeguards required in making the determination;

- Constitutes a statement of policy or guidance with respect to the plan concerning the denied treatment option or benefit for the *claimant's* diagnosis, without regard to whether the statement was relied on in making the benefit determination.

### Exhaustion of remedies

Upon completion of the appeals process under this section, a *claimant* will have exhausted his or her administrative remedies under the plan. If Humana fails to complete a claim determination or appeal within the time limits set forth above, the claim shall be deemed to have been denied and the *claimant* may proceed to the next level in the review process.

After exhaustion of remedies, a *claimant* may pursue any other legal remedies available, which may include bringing civil action under ERISA section 502(a) for judicial review of the plan's determination. Additional information may be available from the local U.S. Department of Labor Office.

### Legal actions and limitations

No lawsuit may be brought with respect to plan benefits until all remedies under the plan have been exhausted.

## NOTICES (continued)

No lawsuit with respect to plan benefits may be brought after the expiration of the applicable limitations period stated in the benefit plan document. If no limitation is stated in the benefit plan document, then no such suit may be brought after the expiration of the applicable limitations under applicable law.

## Federal legislation

### Women's health and cancer rights of 1998
### Required coverage for reconstructive surgery following mastectomies

Under federal law, group health plans and health insurance issuers offering group health insurance providing medical and surgical benefits with respect to mastectomy shall provide, in a case of a participant or beneficiary who is receiving benefits in connection with a mastectomy and who elects breast reconstruction in connection with such mastectomy, coverage for:

- Reconstruction of the breast on which the mastectomy has been performed;
- Surgery and reconstruction of the other breast to produce symmetrical appearance; and
- Prostheses and physical complications of all stages of mastectomy, including lymphedemas,

in a manner determined in consultation with the attending physician and the patient. Such coverage may be subject to annual deductibles and coinsurance provisions as may be deemed appropriate and as are consistent with those established for other benefits under the plan.

### Statement of rights under the newborn' and mothers' health protection act (NMHPA)

If your plan covers normal pregnancy benefits, the following notice applies to you.

Under federal law, group health plans and health insurance issuers offering group health insurance coverage generally may not restrict benefits for any hospital length of stay in connection with childbirth for the mother or newborn child to less than 48 hours following a vaginal delivery or less than 96 hours following a delivery by cesarean section. However, the plan or issuer may pay for a shorter stay if the attending provider (e.g., physician, nurse midwife, or physician assistant), after consultation with the mother, discharges the mother or newborn earlier.

Also, under federal law, group health plans and health insurance issuers may not set the level of benefits or out-of-pocket costs so any later portion of the 48-hour (or 96-hour) stay is treated in a manner less favorable to the mother or newborn than any earlier portion of the stay.

In addition, a group health plan or health insurance issuer may not, under federal law, require a physician or other health care provider obtain authorization for prescribing a length of stay of up to 48 hours (or 96 hours). However, to use certain providers or facilities, or to reduce your out-of-pocket costs, you may be required to obtain pre-authorization. For information on pre-authorization, contact your plan administrator.

## NOTICES (continued)

### Medical child support orders

An individual who is a child of a covered employee shall be enrolled for coverage under the group health plan in accordance with the direction of a Qualified Medical Child Support Order (QMCSO) or a National Medical Support Notice (NMSO).

A QMCSO is a state-court order or judgment, including approval of a settlement agreement that:

- Provides for support of a covered employee's child;
- Provides for health care coverage for that child;
- Is made under state domestic relations law (including a community property law);
- Relates to benefits under the group health plan; and
- Is "qualified," i.e., it meets the technical requirements of ERISA or applicable state law.

QMCSO also means a state court order or judgment enforcing state Medicaid law regarding medical child support required by the Social Security Act §1908 (as added by Omnibus Budget Reconciliation Act of 1993).

An NMSO is a notice issued by an appropriate agency of a state or local government that is similar to a QMCSO requiring coverage under the group health plan for a dependent child of a non-custodial parent who is (or will become) a covered person by a domestic relations order providing for health care coverage.

Procedures for determining the qualified status of medical child support orders are available at no cost upon request from the plan administrator.

### General notice of COBRA continuation coverage rights

#### Introduction

You are receiving this notice because you have recently become covered under a group health plan (the Plan). This notice contains important information about your right to COBRA continuation coverage, which is a temporary extension of coverage under the Plan. This notice generally explains COBRA continuation coverage, when it may become available to you and your family, and what you need to do to protect the right to receive it.

The right to COBRA continuation coverage was created by a federal law, the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA). COBRA continuation coverage can become available to you when you would otherwise lose your group health coverage. It can also become available to other members of your family who are covered under the Plan when they would otherwise lose their group health coverage. For additional information about your rights and obligations under the Plan and under federal law, you should review the Plan's Summary Plan Description or contact the Plan Administrator.

## NOTICES (continued)

### What is COBRA Continuation Coverage?

COBRA continuation coverage is a continuation of Plan coverage when coverage would otherwise end because of a life event known as a "qualifying event." Specific qualifying events are listed later in this notice. After a qualifying event, COBRA continuation coverage must be offered to each person who is a "qualified beneficiary." You, your spouse, and your dependent children could become qualified beneficiaries if coverage under the Plan is lost because of the qualifying event. Under the Plan, the qualified beneficiaries who elect COBRA continuation coverage must pay for COBRA continuation coverage.

If you are an employee, you will become a qualified beneficiary if you lose your coverage under the Plan because either one of the following qualifying events happens:

- Your hours of employment are reduced; or
- Your employment ends for any reason other than gross misconduct.

If you are the spouse of an employee, you will become a qualified beneficiary if you lose your coverage under the Plan because any of the following qualifying events happens:

- Your spouse dies;
- Your spouse's hours of employment are reduced;
- Your spouse's employment ends for any reason other than his or her gross misconduct;
- Your spouse becomes entitled to Medicare benefits (under Part A, Part B, or both); or
- You become divorced or legally separated from your spouse.

Your dependent children will become qualified beneficiaries if they lose coverage under the Plan because any of the following qualifying events happens:

- The parent-employee dies;
- The parent-employee's hours of employment are reduced;
- The parent-employee's employment ends for any reason other than his or her gross misconduct;
- The parent-employee becomes entitled to Medicare benefits (Part A, Part B, or both);
- The parents become divorced or legally separated; or
- The child stops being eligible for coverage under the plan as a "dependent child."

### When is COBRA Coverage Available?

The plan will offer COBRA continuation coverage to qualified beneficiaries only after the Plan Administrator has been notified that a qualifying event has occurred. When the qualifying event is the end of employment or reduction of hours of employment, death of the employee, or commencement of a proceeding in bankruptcy with respect to the employer, the employer must notify the Plan Administrator of the qualifying event.

## NOTICES (continued)

**You Must Give Notice of Some Qualifying Events**

**For the other qualifying events (<u>divorce</u> or <u>legal separation</u> of the employee and spouse or a <u>dependent child's losing eligibility for coverage</u> as a dependent child) you must notify the Plan Administrator within 60 days after the qualifying event occurs.**

How is COBRA Coverage Provided?

Once the Plan Administrator receives notice that a qualifying event has occurred, COBRA continuation coverage will be offered to each of the qualified beneficiaries. Each qualified beneficiary will have an independent right to elect COBRA continuation coverage. Covered employees may elect COBRA continuation coverage on behalf of their spouses, and parents may elect COBRA continuation coverage on behalf of their children. Once the Plan Administrator offers COBRA continuation coverage, the qualified beneficiaries must elect such coverage with 60 days.

COBRA continuation coverage is a temporary continuation of coverage. When the qualifying event is the death of the employee, your divorce or legal separation, or a dependent child's losing eligibility as a dependent child, COBRA continuation coverage lasts for up to a total of 36 months. When the qualifying event is the end of employment or reduction in the employee's hours of employment, and the employee became entitled to Medicare benefits less than 18 months before the qualifying event, COBRA continuation coverage for qualified beneficiaries other than the employee last until 36 months after the date of Medicare entitlement. For example, if a covered employee becomes entitled to Medicare 8 months before the date on which the employment terminates, COBRA continuation coverage for his spouse and children can last up to 36 months after the date of Medicare entitlement, which is equal to 28 months after the date of the qualifying event (36 months minus 8 months). Otherwise, when the qualifying event is the end of employment or reduction of the employee's hours of employment, COBRA continuation coverage generally lasts for only up to at total of 18 months. There are two ways in which this 18-month period of COBRA continuation coverage can be extended.

*Disability extension of 18-month period of continuation coverage* - If you an anyone in your family covered under the Plan is determined by the Social Security Administration to be disabled and you notify the Plan Administrator within 60 days of such determination, you and your entire family may be entitled to receive up to an additional 11 months of COBRA continuation coverage, for a total of 29 months. The disability would have to have started at some time before the 60th day of COBRA continuation coverage and must last at least until the end of the 18-month period of continuation coverage;

*Second qualifying event extension of 18-month period of continuation coverage* - If your family experiences another qualifying event while receiving 18 months of COBRA continuation coverage, the spouse and dependent children in your family can get up to 18 additional months of COBRA continuation coverage, for a maximum of 36 months, if notice of the second qualifying event is given to the Plan within 60 days of the event. This extension may be available to the spouse and any dependent children receiving continuation coverage if the employee or former employee dies, gets divorced or legally separated, or if the dependent child stops being eligible under the Plan as a dependent child, but only if the event would have caused the spouse or dependent child to lose coverage under the Plan had the first qualifying event not occurred.

Case 1:08-cv-00864    Document 12-2    Filed 04/11/2008    Page 29 of 34
Case 1:08-cv-0    64    Document 1-9    Filed 02/08/    8    Page 1 of 34    JUDGE LEFKOW
MAGISTRATE JUDGE MASON
08 C 864

## NOTICES (continued)

**If You Have Questions**

Questions concerning your Plan or your COBRA continuation coverage rights should be addressed to the contact or contacts identified below. For more information about your rights under ERISA, including COBRA, the Health Insurance Portability and Accountability Act (HIPAA), and other laws affecting your group health plans, contact the nearest Regional or District Office of the U.S. Department of Labor's Employee Benefits Security Administration (EBSA) in your area or visit the EBSA website at www.dol.gob/ebsa. (Addresses and phone numbers of Regional and District EBSA Offices are available through EBSA's website.)

**Keep Your Plan Informed of Address Changes**

In order to protect your family's rights, you should keep the Plan Administrator informed of any changes in the addresses of family members. You should also keep a copy, for your records, of any notices you send to the Plan Administrator.

**Plan Contact Information**

Humana
Billing/Enrollment Department
101 E Main Street
Louisville, KY 40201
1-800-872-7207

**Important notice for individuals entitled to Medicare tax equity and fiscal responsibility act of 1982 (TEFRA) options**

Where an employer employs more than 20 people, the Tax Equity And Fiscal Responsibility Act of 1982 (TEFRA) allows covered employees in active service who are age 65 or older and their covered spouses who are eligible for Medicare to choose one of the following options:

- *Option 1* - The benefits of their group health plan will be payable first and the benefits of Medicare will be payable second.
- *Option 2* - Medicare benefits only. The employee and his or her dependents, if any, will not be insured by the group health plan.

The employer must provide each covered employee and each covered spouse with the choice to elect one of these options at least one month before the covered employee or the insured spouse becomes age 65. All new covered employees and newly covered spouses age 65 or older must be offered these options. If Option 1 is chosen, its issue is subject to the same requirements as for an employee or dependent that is under age 65.

## NOTICES (continued)

Under TEFRA regulations, there are two categories of persons eligible for Medicare. The calculation and payment of benefits by the group health plan differs for each category.

- *Category 1* Medicare eligibles are:

  - Covered employees in active service who are age 65 or older who choose Option 1;
  - Age 65 or older covered spouses; and
  - Age 65 or older covered spouses of employees in active service who are either under age 65 or age 70 or older;

- *Category 2* Medicare eligibles are any other covered persons entitled to Medicare, whether or not they enrolled. This category includes, but is not limited to:

  - Retired employees and their spouses; or
  - Covered dependents of a covered employee, other than his or her spouse.

### Calculation and payment of benefits

For covered persons in Category 1, benefits are payable by the policy without regard to any benefits payable by Medicare. Medicare will then determine its benefits.

For covered persons in Category 2, Medicare benefits are payable before any benefits are payable by the policy. The benefits of the policy will then be reduced by the full amount of all Medicare benefits the covered person is entitled to receive, whether or not the eligible individual is actually enrolled for Medicare Benefits.

### Family and Medical Leave Act (FMLA)

If an employee is granted a leave of absence (Leave) by the *employer* as required by the Federal Family and Medical Leave Act, s/he may continue to be covered under the plan for the duration of the Leave under the same conditions as other *employees* who are currently employed and covered by the plan. If the employee chooses to terminate coverage during the Leave, or if coverage terminates as a result of nonpayment of any required contribution, coverage may be reinstated on the date the employee returns to work immediately following the end of the Leave. Charges incurred after the date of reinstatement will be paid as if the employee had been continuously covered.

### Uniformed services employment and reemployment rights act of 1994 (USERRA)

### Continuation of benefits

Effective October 13, 1994, federal law requires health plans offer to continue coverage for employees that are absent due to service in the uniformed services and/or dependents.

14

## NOTICES (continued)

### Eligibility

An employee is eligible for continuation under USERRA if he or she is absent from employment because of voluntary or involuntary performance of duty in the Armed Forces, Army National Guard, Air National Guard, or commissioned corps of the Public Health Service. Duty includes absence for active duty, active duty for training, initial active duty for training, inactive duty training and for the purpose of an examination to determine fitness for duty.

An employee's dependents that have coverage under the plan immediately prior to the date of the employee's covered absence are eligible to elect continuation under USERRA.

If continuation of Plan coverage is elected under USERRA, the employee or dependent is responsible for payment of the applicable cost of coverage. If the employee is absent for not longer than 31 days, the cost will be the amount the employee would otherwise pay for coverage. For absences exceeding 30 days, the cost may be up to 102% of the cost of coverage under the plan. This includes the employee's share and any portion previously paid by the employer.

### Duration of coverage

If elected, continuation coverage under USERRA will continue until the earlier of:

- 24 months beginning the first day of absence from employment due to service in the uniformed services; or
- The day after the employee fails to apply for a return to employment as required by USERRA, after the completion of a period of service.

Under federal law, the period coverage available under USERRA shall run concurrently with the COBRA period available to an employee and/or eligible dependent.

### Other information

Employees should contact their employer with any questions regarding coverage normally available during a military leave of absence or continuation coverage and notify the employer of any changes in marital status, or change of address.

### Your rights under the Employee Retirement Income Security Act of 1974 (ERISA)

Under the Employee Retirement Income Security Act of 1974 (ERISA), all plan participants covered by ERISA are entitled to certain rights and protections, as described below. Notwithstanding anything in the group health plan or group insurance policy, following are a covered person's minimum rights under ERISA. ERISA requirements do not apply to plans maintained by governmental agencies or churches.

## NOTICES (continued)

Participants should review their group health plan document regarding reduction or elimination of exclusionary periods for preexisting conditions due to creditable coverage from another plan. The group health plan or health insurance issuer should provide a certificate of creditable coverage when coverage ends under the plan, the participant becomes entitled to elect COBRA continuation coverage, COBRA continuation coverage ceases (if COBRA is requested before losing coverage) or, if requested, up to 24 months after losing coverage. Without evidence of creditable coverage, a participant may be subject to a pre-existing condition exclusion for 12 months (18 months for late enrollees) after the coverage enrollment date.

### Claims determinations

If a claim for a plan benefit is denied or disregarded, in whole or in part, participants have the right to know why this was done, to obtain copies of documents relating to the decision without charge and to appeal any denial within certain time schedules.

### Enforce your rights

Under ERISA, there are steps participants may take to enforce the above rights. For instance:

- If a participant requests a copy of plan documents does not receive them within 30 days, the participant may file suit in a Federal court. In such a case, the court may require the plan administrator to provide the materials and pay you up to $110 a day until the participant receives the materials, unless the materials were not sent because of reasons beyond the control of the plan administrator.

- If a claim for benefits is denied or disregarded, in whole or in part, the participant may file suit in a state or Federal court;

- If the participant disagrees with the plan's decision, or lack thereof, concerning the qualified status of a domestic relations order or a medical child support order, the participant may file suit in Federal court;

- If plan fiduciaries misuse the plan's money, or if participants are discriminated against for asserting their rights, they may seek assistance from the U.S. Department of Labor, or may file suit in a Federal court.

The court will decide who should pay court costs and legal fees. If the participant is successful, the court may order the person sued to pay costs and fees. If the participant loses, the court may order the participant to pay the costs and fees.

### Assistance with questions

- Contact the group health plan human resources department or the plan administrator with questions about the plan;

## NOTICES (continued)

For questions about ERISA rights, contact the nearest area office of the Employee Benefits Security Administration, U.S. Department of Labor, listed in your telephone directory or:

The Division of Technical Assistance and Inquiries

Employee Benefits Security Administration

U.S. Department of Labor

200 Constitution Avenue N.W.

Washington, D.C. 20210;

- Call the publications hotline of the Employee Benefits Security Administration to obtain publications about ERISA rights.

### Privacy and confidentiality statement

We understand the importance of keeping your personal and health information private (PHI). PHI includes both medical information and individually identifiable information, such as your name, address, telephone number or social security number. We are required by applicable federal and state law to maintain the privacy of your PHI.

Under both law and our policies, we have a responsibility to protect the privacy of your PHI. We:

- Protect your privacy by limiting who may see your PHI;
- Limit how we may use or disclose your PHI;
- Inform you of our legal duties with respect to your PHI;
- Explain our privacy policies; and
- Strictly adhere to the policies currently in effect.

We reserve the right to change our privacy practices at any time, as allowed by applicable law, rules and regulations. We reserve the right to make changes in our privacy practices for all PHI that we maintain, including information we created or received before we made the changes. When we make a significant change in our privacy practices, we will send notice to our health plan subscribers. For more information about our privacy practices, please contact us.

As a covered person, we may use and disclose you PHI, without your consent/authorization, in the following ways:

**Treatment:** We may disclose your PHI to a health care practitioner, a hospital or other entity which asks for it in order for you to receive medical treatment.

**Payment:** We may use and disclose your PHI to pay claims for covered services provided to you by health care practitioners, hospitals or other entities.

## NOTICES (continued)

We may use and disclose your PHI to conduct other health care operations activities.

It has always been our goal to ensure the protection and integrity of your personal and health information. Therefore, we will notify you of any potential situations where your identification would be used for reasons other than treatment, payment and health plan operations.